

# THE ATTORNEY GENERAL
## OF TEXAS

September 21, 1987

JIM MATTOX
ATTORNEY GENERAL

Honorable Kent A. Caperton
Chairman
Jurisprudence Committee
Texas State Senate
P. O. Box 2910
Austin, Texas   78711

Opinion No. JM-790

Re:  Authority of a municipality to enact a "repair and deduct" ordinance

Dear Senator Caperton:

You ask whether a municipality may enact what you term a "repair and deduct" ordinance.  By "repair and deduct," you describe an ordinance that would permit a tenant to deduct from his rent payment those amounts that the tenant expended to repair a deficiency in the rental property that the landlord had a duty to repair but had unreasonably failed to repair.  You do not ask about any specific ordinance.  You wish to know whether the legislature, with its enactment of chapter 92 of the Property Code, has preempted a municipality from enacting such an ordinance.  We conclude that the legislature has preempted the field in this area of the law.  Accordingly, we conclude that a municipality may not enact the sort of ordinance that you describe.

Article XI, section 5, of the Texas Constitution provides that a home-rule city, by a majority vote of its qualified voters, may adopt or amend a charter

> subject to such limitations as may be prescribed by the Legislature, and providing that no charter or any ordinance passed under said charter shall contain any provision inconsistent with the Constitution of the State, or of the general laws enacted by the Legislature of this State. (Emphasis added.)

See, e.g., Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641 (Tex. 1975); City of Wichita Falls v. Abell, 566 S.W.2d 336 (Tex. Civ. App. – Fort Worth 1978, writ ref'd n.r.e.).  At issue is whether various sections of the Property Code, taken together, fairly can be said to preempt the field in this area of law and effectively prohibit a municipality from enacting the sort of ordinance that you describe.

The duties of a landlord and the remedies afforded a tenant are set forth in chapter 92 of the Property Code. The various subchapters of chapter 92 govern the repair or closing of a leasehold, the entrustment of security deposits, the installation of security devices, the disclosure of ownership and management of the project, and the installation of smoke detectors. Specifically, subchapter B of chapter 92 contains provisions governing the repair or closing of a leasehold. Section 92.052 of the code sets forth the landlord's duty to repair or remedy defects in the property and provides the following:

> (a) A landlord shall make a diligent effort to repair or remedy a condition if:
>
> > (1) the tenant specifies the condition in a notice to the person to whom or to the place where rent is normally paid;
> >
> > (2) the tenant is not delinquent in the payment of rent at the time notice is given; and
> >
> > (3) the condition materially affects the physical health or safety of an ordinary tenant.
>
> (b) The landlord does not have a duty to repair or remedy a condition caused during the term of the lease, including a renewal or extension, by the tenant, a member of the tenant's family, or a guest of the tenant, unless the condition was caused by normal wear and tear.
>
> (c) This subchapter does not require the landlord:
>
> > (1) to furnish utilities from a utility company if as a practical matter the utility lines of the company are not reasonably available; or
> >
> > (2) to furnish security guards.
>
> (d) The tenant's notice under Subsection (a) must be in writing only if the tenant's lease is in writing and requires written notice.

See also Property Code, §92.053 (imposing burden of proof on tenant to enforce remedies under section 92.052).

Section 92.056 sets forth specific provisions regarding landlord liability and tenant remedies, with the remedies enforceable only by a judicial order, and provides the following:

(a) A landlord who has a duty to repair or remedy under section 92.052 is liable to a tenant according to this section if:

(1) after receiving notice to repair the landlord has had a reasonable time, considering the nature of the problem and the reasonable availability of materials, labor, and utilities from a utility company, to repair or remedy the condition; and

(2) the landlord has not made a diligent effort to repair or remedy the condition before the eighth day after the tenant gives the landlord written notice that the tenant will terminate the lease or file suit under this subchapter unless the condition is repaired or remedied on or before the seventh day after the date the notice is given.

(b) The tenant of a landlord who is liable under Subsection (a) may either terminate the lease or obtain one or more of the following judicial remedies:

(1) an order directing the landlord to take reasonable action to repair or remedy the condition;

(2) an order reducing the tenant's rent in proportion to the reduced rental value resulting from the condition until the condition is repaired or remedied;

(3) a judgment against the landlord for one month's rent plus $100;

(4) a judgment against the landlord for the amount of the tenant's actual damages; or

(5) court costs and attorney's fees, excluding any attorney's fees for a cause of action for damages relating to a personal injury.

(c) A tenant who elects to terminate the lease is entitled to a pro rata refund of rent from the

> date of termination or the date the tenant moves
> out, whichever is later, and to a refund of the
> tenant's security deposit as required by law, but
> is not entitled to a remedy provided by Subdivi-
> sion (1) or (2) of Subsection (b).
>
> (d) The county and district courts have exclus-
> ive jurisdiction of an action under Subdivision
> (1) or (2) of Subsection (b).

Articles 92.057 and 92.058 proscribe retaliation by either the landlord or by the tenant, respectively. Section 92.058 specifically proscribes a tenant from tendering a rent payment offset in retaliation for an alleged failure of the landlord to remedy or repair a defect:

> (a) If after a landlord notifies a tenant of
> the penalties under this section the tenant with-
> holds payment of any part of the rent owed the
> landlord in retaliation for an alleged failure by
> the landlord to repair or remedy a condition com-
> plained of by the tenant, the tenant is liable to
> the landlord for:
>
> (1) one month's rent plus $100; and
>
> (2) attorney's fees.
>
> (b) Notice under this section must be in
> writing and may be given in person, by mail, or by
> delivery to the premises.

Section 92.054 of the Property Code is the only provision in subchapter B that permits a rent offset under certain specified circumstances, but only pursuant to a judgment of a county or district court, and provides the following:

> (a) If a condition results from an insured
> casualty loss, such as fire, smoke, hail, explo-
> sion, or a similar cause, the period for repair
> does not begin until the landlord receives the
> insurance proceeds.
>
> (b) If after a casualty loss the rental
> premises are as a practical matter totally
> unusable for residential purposes and if the
> casualty loss is not caused by the negligence or
> fault of the tenant, a member of the tenant's
> family, or a guest of the tenant, either the
> landlord or the tenant may terminate the lease by

> giving written notice to the other any time before repairs are completed. If the lease is terminated, the tenant is entitled only to a pro rata refund of rent from the date the tenant moves out and to a refund of any security deposit otherwise required by law.
>
> (c) <u>If after a casualty loss the rental premises are partially unusable for residential purposes and if the casualty loss is not caused by the negligence or fault of the tenant, a member of the tenant's family, or a guest of the tenant, the tenant is entitled to reduction in the rent in an amount proportionate to the extent the premises are unusable because of the casualty, but only on judgment of a county or district court. A landlord and tenant may agree otherwise in a written lease.</u>

And finally, section 92.061 is entitled "Effect on Other Rights" and sets forth the following:

> <u>The duties of a landlord and the remedies of a tenant under this subchapter are in lieu of existing common and other statutory law warranties and duties of landlords for maintenance, repair, security, habitability, and nonretaliation, and remedies of tenants for a violation of those warranties and duties.</u> Otherwise, this subchapter does not affect any other right of a landlord or tenant under contract, statutory law, or common law that is consistent with the purposes of this subchapter or any right a landlord or tenant may have to bring an action for personal injury or property damage under the law of this state. This subchapter does not impose obligations on a landlord or tenant other than those expressly stated in this subchapter. (Emphasis added.)

Generally, the governing bodies of cities are prohibited by the Texas Constitution and statutes from entering a field of legislation that has been occupied by general legislative enactments. <u>Leach v. Coleman</u>, 188 S.W.2d 220 (Tex. Civ. App. - Austin 1945, writ ref'd. w.o.m.); <u>Prescott v. City of Borger</u>, 158 S.W.2d 578 (Tex. Civ. App. - Amarillo 1935, writ ref'd). The limitation placed upon local bodies in regard to entering a field of legislation, by the constitution and statutes, does not extend to those ordinances that are permitted by or are in harmony with constitutional and statutory provisions, even though, in doing so, governing bodies may be said to be entering a field occupied by general legislative enactments. <u>Prescott v. City of</u>

Borger, supra.

The Texas Supreme Court has declared:

> A limitation on the power of home rule cities by general law or charter may be either an express limitation or one arising by implication. 'Such a limitation will not be implied, however, unless the provisions of the general law or of the charter are clear and compelling to that end.' Glass v. Smith, 150 Tex. 632, 244 S.W.2d 645. The intention of the Legislature to impose such limitations must 'appear with unmistakable clarity.' City of Sweetwater v. Geron, Tex. Sup., 388 S.W.2d 550.

Lower Colorado River Authority v. City of San Marcos, 523 S.W.2d 641, 645 (Tex. 1975); see also City of Brookside Village v. Comeau, 633 S.W.2d 790, 796 (Tex. 1982). Action by a city in a certain area of law is preempted if legislation expressly prohibits the action, if the legislature intended state law to occupy the field covered by the action, or if the city's action is in direct conflict with state law even when the state law does not occupy the field. See Attorney General Opinions JM-619 (1987); JM-226 (1984); H-1071 (1977).

It is clear from a reading of the relevant provisions of the Property Code that the legislature intended to occupy the field in this area of landlord-tenant rights. Accordingly, we conclude that a municipality may not enact an ordinance that would permit a tenant to deduct from his rent payment those amounts that the tenant expended to repair a deficiency in the rental property that the landlord had a duty to repair but had unreasonably failed to repair.

## S U M M A R Y

> Chapter 92 of the Property Code preempts the field in the area of landlord-tenant duties and remedies regarding a landlord's duty to repair leased premises; accordingly, a home rule city is effectively precluded from enacting a so-called "repair and deduct" ordinance that would permit a tenant to deduct from his rent payment those amounts that the tenant expended to repair a deficiency in the rental property that the landlord had a duty to repair but had unreasonably failed to repair.

Very truly yours

JIM MATTOX
Attorney General of Texas

MARY KELLER
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Jim Moellinger
Assistant Attorney General